IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | Criminal Action No. 16-00210-KD-MU |
| ) | |
| JUSTIN M. YOUNG, ) | |
| ) | |
| Defendant. ) | |

### ORDER

This action is before the Court on Defendant Justin M. Young's "Emergency Reinstatement Motion bearing to Covid 19 Reduction in Sentence" (doc. 61), the United States' notice to the Court and response (docs. 59, 63) and Young's reply (doc. 65). Upon consideration, and for the reasons set forth herein, the Motion is DISMISSED without prejudice.

I.     Background

Defendant Young pled guilty to Count 1 of the Indictment, which charged the offense of receiving and distributing images of child pornography. Based on a total offense level of 37 and a criminal history category of I, his advisory guidelines range was 210 to 262 months (doc. 39). The offense of conviction carried a mandatory maximum sentence of 240 months. Therefore, his guidelines range was 210 to 240 months. On July 14, 2017, the Court sentenced Young to a variance sentence of 72 months with supervised release for life (doc. 45, Judgment).

In August 2020, Young filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (doc. 47). Young alleged that the Covid-19 coronavirus has infected inmates at FCI Oakdale I, with fatalities, and the Warden was not protecting him from exposure to the virus. The motion was denied on basis that he failed to show extraordinary and compelling reasons for early release (doc. 58).

Young is now 34 years old.  He is currently incarcerated at FCI Oakdale I in Oakdale, Louisiana.  His estimated release date is May 26, 2022.  He has served approximately three years and nine months of his six-year sentence.

    II.       Motion for Reduction of Sentence and/or Compassionate Release

    A.       Statutory Prerequisites

In relevant part, the compassionate release provision of 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018, provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment" after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)", if certain other conditions are met. 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

Young argues that during the documented Covid 19 "explosion",  his obesity places him at grave risk of serious illness and long-term consequences should he contract the virus and constitutes an extraordinary and compelling reason for immediate release (doc. 61, p. 4-8).[1] Young does not allege that he exhausted his administrative remedies after the BOP failed to bring a motion based on obesity on his behalf or that the Warden received his request for same and more than thirty days lapsed before he filed this motion.  Instead, he incorporates by reference all prior documents submitted in support of his first motion (doc. 61, p. 3).  The United

---

[1] He argues that he "cannot practice the recommended social distancing nor force staff or inmate[s] to wear protective gear" (Id., p. 10).  Young also argues that the rate of Covid 19 infection is higher in prisons because of close confinement and lack of access to protective equipment, and that the outbreak in prisons "is unlikely to be contained without implementation of more effective infection control" (doc. 63, p. 5).

States does not take issue with the absence of evidence regarding whether Young has met either of the statutory prerequisites (doc. 63).

Logically, a second request to the BOP or the Warden, based upon different grounds than a prior request, would be a necessary prerequisite to the Court's consideration of a second motion for compassionate release. Accordingly, Young's motion is dismissed without prejudice for his failure to establish that he meets the statutory prerequisites.

B.   Analysis

However, if Young had met the statutory prerequisites, his motion would be denied. Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same). Specifically, the district court may not modify a term of imprisonment once it has been imposed except as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 729 (11th Cir. Feb. 25, 2020) (citing 18 U.S.C. § 3582(c)). Title 18 U.S.C. § 3582(c)(1)(A) provides for modification or reduction of a sentence i.e., compassionate release. Since Young is 34 years old, only subparagraph (i) could apply.[2]

The compassionate release provision 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, provides that the district court "upon motion of the defendant after the defendant" has met certain statutory prerequisites, see supra, ¶ A, "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

---

[2] Subparagraph (ii) provides for a reduction of sentence when "the defendant is at least 70 years of age, has served at least 30 years in prison" and other factors are met. 18 U.S.C. § 3582(c)(1)(A)(ii).

[applicable] factors set forth in 18 U.S.C. § 3553(a)", if the district court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

"Extraordinary and compelling" reasons are not defined in the statute. 18 U.S.C. § 3582(c)(1)(A). Instead, Congress gave the Sentencing Commission the duty to promulgate general policy statements regarding sentence modifications pursuant to 18 U.S.C. § 3582(c)(1)(A) and stated that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress also stated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id.

The applicable Policy Statement is found at U.S.S.G. § 1B1.13. Before the First Step Act was enacted, the Sentencing Commission promulgated the following Policy Statement, with criteria and examples:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; or . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.[3]

---

[3] Subparagraph (B) provides for consideration of compassionate release if "[t]he defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence

4

The Application Notes to the Policy Statement include four examples of extraordinary and compelling reasons for consideration of a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). Youngs obesity[4] may fall within the criteria of Application Note 1(A)(ii)(I), which provides that an extraordinary and compelling reason exists if the defendant is

> (I) suffering from a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

The United States concedes that "the Department of Justice's litigating position is that certain levels of obesity may qualify as extraordinary and compelling in the light of the COVID-19 pandemic". (doc. 59); (doc. 63, p. 5). However, Young does not provide the Court with any evidence as to the level of his obesity in his motion (doc. 61). But in his objection to the United States' response to his first motion, Young states that he is five foot and seven inches tall, weighs plus or minus 300 pounds, and his body mass index exceeds 40 (doc. 60) According to the Centers for Disease Control and Prevention's Body Mass Index Calculator, his BMI would be 47, which qualifies as severe obesity. https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last viewed January 14, 2021). According to the CDC, "[h]aving . . . severe obesity

---

imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned[.]" Since Young is 34 years old, subparagraph (B) cannot apply to him.

[4] Young does not allege that he has a terminal illness, a serious functional or cognitive impairment, or that he is experiencing deteriorating physical or mental health because of the aging process, such that his ability to provide self-care in prison is substantially diminished. He does not allege that his family circumstances meet the criteria in Application Note 1(C), or that he meets the age requirement in Application Note 1(B) (at least 65 years old). U.S.S.G. § 1B1.13, cmt. n. 1(A)(i), (ii)(II)&(III), (B) & (C).

(BMI of 40 kg/m or above), increases your risk of severe illness from COVID-19." Centers for Disease Control and Prevention, *Persons with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last visited January 14, 2021). Thus, if Young meets the statutory prerequisites, and files another motion for compassionate release, he may be able to meet his burden to show that there are extraordinary and compelling reasons for compassionate release during the Covid 19 outbreak.

However, even if Young could meet his burden to show extraordinary and compelling reasons which warrant a sentence reduction under Application Note 1(A)(ii)(I), the Court must still weigh the applicable sentencing factors. 18 U.S.C. § 3582(c)(1)(A) (the court . . . may reduce the term of imprisonment . . . after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a).") (underlining added). 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

In that regard, the United States argues that Young's 72-month sentence is appropriate and that early release would "undermine the seriousness" of his offense and "pose a potential recidivism risk" (doc. 63, p. 5-6). The United States points out that Young's conduct "re-exploited the child victims" and contributed to an industry that perpetuates child exploitation.

Relying upon comments from the factual resume, the United States points out that while Young admitted his conduct was wrong, he "downplayed the seriousness" by calling receipt of child pornography a "'fantasy'" and stating that he was not "'one of those creepy uncle dudes that hang around the school and stared at kids all day long'" (doc. 63, p. 6) (quoting doc. 33, p. 14). The United States argues that these comments indicate that Young did not understand the seriousness of his offense, and therefore, his sentence is "appropriate to promote respect for the law, deter this conduct and protect the public" (Id., p. 7).

The United States also points to comments in Young's motion as "similarly troubling" (doc. 63, p. 7). Specifically, Young's questioning investigative tactics used to locate and arrest persons involved in circulation of child pornography. The United States asserts that Young "does not clearly accept responsibility for the gravity of his offense and the harm it inflicts" (Id.). The United States also points to Young's assertion that child pornographers "tend to be better educated, of higher intelligence, and more likely to be gainfully employed that other types of offenders" (Id.). Overall, the United States argues that Young's motion "does not inspire confidence that he appreciates the wrongfulness of his actions or that he will not reoffend if granted compassionate release". (Id.).

Young points out that he has served 65.5% of his sentence with no disciplinary infractions, has continuously worked work in food service, and that the "Bureau of Prisons count Movant as a 'Model' inmate" and (doc. 61, p. 8, 10; doc. 65, p. 4). He argues that his risk of recidivism is "low" to "minimum" (doc. 61, p. 8; doc. 65, p. 4) and that the BOP's "registering Movant as a minimum risk for recidivism gives clarity to whether a danger is posed to the community upon Movant's release" (doc. 61, p.10) (doc. 65, p. 4, reply). Young also argues that "sanctioning" the United States' position that he poses a risk of potential recidivism would violate his Constitutional rights under the Fifth and Sixth Amendment (doc. 65, p. 4).

Young also raises three "Equal Protection Clause" arguments. He argues that the Eleventh Circuit Court of Appeals has held that the Equal Protection Clause "required the states to treat similarly situated persons in a similar manner" (doc. 61, p. 10; doc. 65, p. 2). From this ruling, he argues that other district courts have released "CDC vetted inmates from Oakdale Prison" (doc. 61, p. 10). He also argues that other child pornography offenders have been granted compassionate release after consideration of the § 3553(a) factors (doc. 65, p. 6). Young

7

also argues there is a "disparity" between the compassionate release motions granted for first-time child pornography offenders as opposed to career controlled substance offenders (doc. 65, p. 2-3). He asserts that if a "career drug offender or violent offender gains compassionate release/reduction in sentencing then Movant earns equal protections" (doc. 61, p. 10) (doc. 65, p. 4 (asserting that the United States' position is that career drug offenders are eligible under § 3553(a) but a "non-violent, first time offender is not warranting of equal protection").

Young also challenges the United States' past-position that the seriousness of the offense was a reason to deny his first motion (doc. 61, p. 8-9). Specifically, the United States' position that each time child pornographic images are circulated, the child is victimized again (Id.). Young cites to the United States' response to his <u>first</u> motion (doc. 52, p. 9-10 ). Thus, in an apparent pre-emptive effort to rebut this argument before the United States raises it again, he seeks to minimize the seriousness of his offense, and argues as follows:

> Question begs posing to Assistant United States Attorney Scott A. Gray, does he condone the methods of the Federal Bureau of Investigation who, for a period of time, orchestrated a sting operation which circulated child pornography.

(Doc. 61, p. 9).

The Court has considered Young's history and characteristics. The Court acknowledges that Young is a first-time offender, that he graduated from high school, and has an Associates Degree in Applied Science. That he is a first-time offender weighs in his favor.

The Court has also considered the nature and circumstances of Young's offense and finds that these factors do not weigh in favor of a sentence reduced to time served. 18 U.S.C. § 3553(a)(1). The Court is concerned that if Young cannot differentiate between his illegal circulation of child pornography and legitimate law enforcement methods which circulate child pornography for the purpose of apprehending criminals in order to protect the child victims and

the public, then he truly does not comprehend the seriousness of his crime. Also, Young's "Equal Protection" argument is misplaced. If such an argument regarding reduction in sentencing decisions by different federal courts across the United States could exist, there is no "substantial similarity" between career drug offenders or violent offenders and persons convicted of child pornography offenses. Moreover, the decision whether to grant a reduction in sentence is based on factors that are unique and personal to each defendant.

Also, in his reply, Young argues that the United States' opinion of the threat of recidivism is "erroneous" (doc. 65, p. 7). Among the arguments, he states that the "Pre-sentence investigation report evidences the lack of identifiable victims therein, …" (doc. 63, p. 4). Young appears to believe that the lack of an identifiable victim somehow reduces the threat of recidivism. Young must be referring to the victim impact section wherein the report states that "the offense of conviction has no direct victim" (doc. 39, p. 6). However, the report states in full

> The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. By its nature, the offense of conviction has no direct victim; rather, it is a crime against society. The National Center for Missing and Exploited Children notes: "Child pornography has devastating effects on children, both on those who are exploited in the actual pictures, and those who view it. Child pornography places the children depicted in harmful situations including the contraction of sexually transmitted diseases, rape, assault, and torture..."

(Doc. 39, p. 6).

Additionally, Young's sentencing guidelines calculation was enhanced by two levels because the images involved prepubescent minors; enhanced by five levels because the images were distributed in exchange for valuable consideration; enhanced by four levels because the materials portrayed sexual abuse or exploitation of an infant or toddler; enhanced by two levels because the offense involved the use of a computer or computer service to possess, transmit, receive, distribute or access the materials with intent to view; and enhanced by five levels

because the offense involved 600 or more images (doc. 39, p. 6-7).  Although there is "no identifiable victim", Young's argument indicates a lack of comprehension of the nature and seriousness of his offense.

In this circumstance, early release would not meet the need for the sentence imposed to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", or to adequately deter criminal conduct and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A), (B), & (C).  Accordingly, Young's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) would be due to be denied.

**DONE** and **ORDERED** this 15th day of January 2021.

> s / Kristi K. DuBose
> **KRISTI K. DuBOSE**
> **CHIEF UNITED STATES DISTRICT JUDGE**